Melvin Lee JAMIESON, Petitioner

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (CHICAGO BRIDGE & IRON), Respondent.**

Melvin Lee JAMIESON, Petitioner

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (FLUOR CONSTRUCTORS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 18, 1996.

Decided March 24, 1997.

---

4. In the absence of a complete record, we are unable to review the questions of whether a *non pros* judgment was appropriate in this matter and whether, assuming that it was, appellant's petition should nonetheless have been granted. Our review is confined to determining whether the trial court erred in denying appellant's petition because the alleged *non pros* was never reduced to judgment.

Michael A. Joanow, Sharon, for petitioner.

Michael A. Cohen, Pittsburgh, for respondent, Chicago Bridge & Iron.

Walter E. Werner, III, Pittsburgh, for respondent, Fluor Constructors.

Before DOYLE and LEADBETTER, JJ., and MIRARCHI, Jr., Senior Judge.

DOYLE, Judge.

Melvin Lee Jamieson (Claimant) appeals from an order of the Workmen's Compensation Appeal Board (Board) which affirmed the decision of the Workers' Compensation Judge (WCJ) denying Claimant's petition for workers' compensation benefits on the basis that Claimant provided insufficient notice to two of his employers pursuant to Section 311 of the Workers' Compensation Act (Act).

The relevant facts, as found by the WCJ, are as follows:

1. On November 19, 1990, [C]laimant ... filed an occupational disease claim petition [against Fluor Constructors, Inc. (Fluor)] in which he alleges work-related emphysema, asthma, and severe lung obstruction, and in which he seeks total workers' compensation benefits beginning in January of 1989.

....

3. On January 22, 1991, [C]laimant filed an occupational disease claim petition against Chicago Bridge & Iron Company [(CBI)], in which he alleges that his injury occurred at the Chevron Refinery in Philadelphia, Pennsylvania.

....

5. On April 5, 1991, [C]laimant filed an occupational disease claim petition against the Songer Construction Corporation in which he alleges that his injury occurred at the Sharon Steel Plant in Farrell, Pennsylvania.

....

8. The above petitions have been consolidated for hearings and decision.

9. Claimant was employed as a boiler-maker for over twenty years. His job included building, repairing and maintaining boilers, as well as pressure vessels and tanks.

10. Claimant was generally employed through a union. He worked an estimated 520 jobs during his twenty some years as a boilermaker. Jobs would range in duration from two weeks to two months.

11. Claimant worked for ... Fluor from October 25, 1988, through November 18, 1988. His job duties included repairing a coal-fired boiler, repairing ductwork, repairing metal, repairing welding, removing asbestos, and removing fiberglass insulation. Claimant testified that these jobs exposed him to lead, sulphar [sic], arsenic, asbestos, and fiberglass insulation. He stated that he became. sick on a gas which was produced while welding was performed on ductwork.

12. Claimant worked for ... CBI from April 18, 1988 through May 27, 1988. His duties included helping to rebuild a hydrofluoric acid plant, working inside a monel acid tank, and welding on condensers. Claimant testified that these jobs exposed him to dusty air conditions, causing him to spit up blood, or making his nose bleed. He also stated that a foul odor was produced while at work which caused his facial and neck skin to peel.

13. Claimant worked for ... Songer from November 2, 1987, through January 14, 1988, and from August 28, 1988, to September 6, 1988. His job duties included taking apart and rebuilding a blast furnace. Claimant testified that this job exposed him to dust, asbestos, fiberglass insulation, lead, coal dust, arsenic, graphite, and various gases.

14. Claimant testified that he reported getting sick while working for ... Fluor, to Ron Wilson, a safety man, and that he was laid off as a result in November of 1988. He further testified that he sought emergency room care within 36 hours after lay-off because he could not breathe and because he developed hives. He testified that he sought medical attention from Terrence E. Kilroy, M.D., in January of 1989, and that he has not worked since that time.

. . . .

17. Dr. Kilroy testified that he saw [C]laimant on January 16, 1989, at which time he diagnosed [C]laimant as suffering from asthmatic bronchitis and chronic obstructive pulmonary disease. Dr. Kilroy opined that [C]laimant's employer was a contributing factor to his contracting of this disease. Insofar as it related to the date of examination, Dr. Kilroy's testimony is accepted as credible and persuasive.

18. Claimant had actual knowledge of an existing disability resulting from a possible relationship to his employment on January 16, 1989.

19. Claimant filed workers' compensation claims against all three defendants in the State of Ohio. His Ohio claims filed against ... CBI and Songer, are dated May 15, 1989 (the claim against ... Fluor is undated). The Ohio claims cite November 14, 1986, and January 16, 1989, as the dates of diagnosis, while citing January[ ] 1989 as the injury discovery date.

20. Given the January 16, 1989, injury discovery date, it follows that [C]laimant was required to notify [his employers] of his alleged occupational disease by May 16, 1989, in order to have met the timeliness requirements of Section 311 of the Pennsylvania Workers' Compensation Act. A close look at the record reveals that the copies of the Ohio claim applications, which [C]laimant introduced into the record, are not time-stamped. The record provides no independent manner in which to verify when [C]laimant actually filed his occupational disease claims against ... Fluor, CBI, and Songer, in Ohio.

21. Claimant also argues that he notified CBI of his work-related medical problems while working for [CBI], and that his complaints to Mr. Wilson, an employee of Fluor, while he worked for Fluor in November of 1988 are tantamount to timely notice of occupational disease. At that time all ... [C]laimant indicated was that he was sick [ (Notes of Testimony, 6/24/91, at 25) ]. This statement standing alone cannot be considered adequate notice. Moreover, the purported notice that [C]laimant gave at these times predates the time that he had actual or constructive complaints [and] therefore do not rise to the level of timely notice within the meaning of the Act.

(WCJ's decision at 1–4, Findings of Fact (F.F.) Nos. 1, 3, 5, 8–14, 17–21.) Because the WCJ concluded that Claimant failed to provide adequate notice under Section 311 of the Workers' Compensation Act[1] to Fluor, CBI, and Songer,[2] the WCJ denied Claimant's claim petitions. Claimant appealed to the Board which affirmed. This appeal followed.

■ On appeal, Claimant's first argument, generic as to both CBI and Fluor, is that the WCJ erred as a matter of law in concluding that Claimant's notice did not meet the requirements set forth in Section 311 because that notice predated the date of disability.

Section 311 provides in pertinent part as follows:

Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment.

77 P.S. § 631.[3] Pursuant to the plain language of Section 311, the notice period does not begin to run until the following occurs:

The claimant has (1) knowledge or constructive knowledge (2) of a disability (3) *which exists*, (4) which results from an occupational disease, and (5) which has a possible relationship to his employment.

*Split Vein Coal Company v. Workmen's Compensation Appeal Board (Erdman)*, 124 Pa.Cmwlth.642, 556 A.2d 958, 961 (1989) (emphasis in original).

In *Split Vein*, this Court addressed the situation where a claimant's notice to his employer predated the date on which he knew or should have known that he was disabled by an occupational disease. In that case, the WCJ concluded that the claimant's notice to his employer was timely under Section 311 of the Act, notwithstanding the fact that it occurred **twenty days prior to the date of disability.** The employer appealed to the Board which affirmed. On appeal to this Court, we affirmed, stating:

[I]t is clear from the plain language of Section 311 that the purpose of the second

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 631.

2. Claimant never appealed from the WCJ's determination with respect to Songer, and, therefore, Songer is not discussed in this opinion.

3. Furthermore, Section 312 of the Act, 77 P.S. § 632, provides in pertinent part as follows:
   The notice referred to in section [311 of the Act] shall inform the employer that a certain employe received an injury, described in ordinary language, in the course of his employ-

ment on or about a specified time, at or near a place specified.
77 P.S. § 632. Pursuant to Section 313 of the act, 77 P.S. § 633,
   The notice referred to in sections [311 and 312 of the Act] may be given to the immediate or other superior of the employe, to the employer, or any agent of the employer regularly employed at the place of employment of the injured employe. Knowledge of the occurrence of the injury on the part of any such agents shall be the knowledge of the employer.
77 P.S. § 633.

sentence, and the importance of a finding of when a claimant knew or should have known of his disability, is to protect a claimant who is disabled, but who may not know of the extent or cause of his disability at the time when he first becomes disabled. It allows for a delay in the start of the time period for giving notice, rather than always automatically starting that 120–day time period on the date of the occurrence of the injury.

In this case, the claimant does not need the extra time.... Notice to the [employer] was not given more than 120 days after [the date of disability], but, to the contrary was given 20 days prior to that date....

It is unusual that the date of notice in this case precedes the date of disability, but we see no problem with it here.... We ... see no prejudice to the employer by this early notice and none has been alleged.

*Id.* 556 A.2d at 961.

Therefore, pursuant to *Split Vein,* the mere fact that a claimant's notice predates his date of disability is not, by itself, a valid basis for finding insufficient notice was provided under Section 311 of the Act. *See also Sun Oil Company v. Workmen's Compensation Appeal Board (Ford),* 156 Pa. Cmwlth.31, 626 A.2d 1251 (1993) (holding that absent a showing of prejudice by the employer, notice of an occupational injury eighteen months prior to the date of disability constitutes timely notice under Section 311 of the Act), *petition for allowance of appeal denied,* 537 Pa. 636, 642 A.2d 489 (1994). Because CBI and Fluor have not alleged any prejudice due to the early notice given by Claimant, we hold that the WCJ erred as a matter of law in Finding No. 21 to the extent that Claimant's notice was not insufficient or untimely merely because it predated Claimant's time of injury.

In addition to finding that Claimant's purported notice "predate[d] the time that [Claimant] had actual or constructive complaints," the WCJ concluded that Claimant's notice was inadequate in other respects as well. (WCJ's Opinion at 4–5; F.F. No. 21; Conclusion of Law No. 1.) Accordingly, Claimant's second argument on appeal is that

the WCJ's finding that Claimant did not provide adequate notice under Section 311 to CBI and Fluor is not supported by substantial evidence.

## CBI

■ With respect to the WCJ's finding of inadequate notice to CBI, it is significant that both Claimant and CBI presented evidence regarding the issue of notice under Section 311 of the Act. Where both parties below have presented evidence, as in the instant case, our standard of review is limited to a determination of whether there has been an error of law, whether constitutional rights were violated, or whether necessary findings were supported by substantial evidence. *Kirkwood v. Unemployment Compensation Board of Review,* 106 Pa.Cmwlth. 92, 525 A.2d 841 (1987). Therefore, we must examine whether the WCJ's finding of inadequate notice to CBI was supported by substantial evidence of record.

After a careful review of the record, we conclude that this finding is supported by substantial evidence of record, namely the testimony of Michael Jeffers, a contracting and project manager for CBI. Mr. Jeffers testified as follows:

Q: Now, you told me that you would have been made aware if anyone had been exposed through inhalation or bodily contact with hydrofluoric acid in any form; isn't that right?

A: That's correct.

Q: Can you tell me whether or not anyone ever made a report of hydrofluoric acid inhalation exposure?

A: Nobody made any reports to us of hydrofluoric acid inhalation exposure.

Q: Would that include that you have no record of any report by Mr. Jamieson of such an exposure?

A: That is correct. We have a few reports on the job site, but they were all of skin contact. None at all of inhalation exposure.

Q: ... Did you have an opportunity to review your records to determine whether [Claimant] was one of the

individuals who made an inquiry or a report concerning skin contact?

A: I did look through them, and no, [Claimant] was not one of the individuals who reported the skin contact.

Q: Now, I ask you to assume that [Claimant] testified before the [WCJ] here in Pennsylvania that he had indicated that he had some difficulties and reported that to a Mr. Maloy and he stated that Mr. Maloy was his supervisor. Did I ask you to check the records to determine if you had a Mr. Maloy in your employ in April and May in 1988 at the Chevron Refinery?

A: Yes, you did. We do confirm that he was employed there. He shows the same worker classification as [Claimant], a boiler maker mechanic.

. . . .

Q: Was Mr. Maloy ... [working] in a supervisory capacity for ... CBI?

A: He was not. He was a boiler maker mechanic.

Q: In reviewing your records, did you have any indication of [Claimant] making any complaints of any other exposures of an inhaled nature [of] any other chemicals or any other elements present on the job site other than hydrofluoric acid?

A: No. There are no records of him making any reports whatsoever.

(Telephone deposition of Michael Jeffers at 18–21.)

Notwithstanding this evidence, Claimant argues that we should overturn the WCJ's finding regarding inadequate notice to CBI because Claimant offered his own testimony that he informed a foreman at CBI that he was injured and, therefore, established timely notice under Section 311 of the Act.

■ As stated above, however, the WCJ's findings do not have to be supported by **uncontradicted** evidence, but only have to be supported by **substantial** evidence. Moreover, the WCJ has the exclusive province to determine the credibility of witnesses and to resolve conflicting evidence. *Thompson v. Workmen's Compensation Appeal Board (Bethlehem Steel Corp. Freight Division),*

683 A.2d 1315 (Pa.Cmwlth.1996). Accordingly, we reject Claimant's argument as it amounts to no more than a request that this Court reweigh the testimony presented to the WCJ regarding notice to CBI.

## FLUOR

■ With respect to the WCJ's finding of inadequate notice to Fluor, it is significant that only Claimant presented evidence regarding this issue. Where, as in the instant case, the party with the burden of proof is the only party to present evidence, and that party does not prevail before the WCJ, our standard of review is as follows:

> [W]e ... first examine the record to determine whether that party as a matter of law, has met his burden. If he has not, we will affirm the [WCJ's] decision. If, on the other hand, it appears that the burdened party *has* presented sufficient competent evidence that, *if believed,* would overcome his burden of proof, and it is not clear from the adjudication that a credibility determination has been made, we will remand the matter to the agency for the proper findings and conclusions of law following those findings. *We will not infer a credibility determination merely from the decision of the factfinder against the party with the burden of proof.* Last, if we determine that the adjudication contains an error of law, we will reverse, even if the testimony of the burdened party is found credible by the factfinder.

*Kirkwood,* 525 A.2d at 845 (emphasis in original).

We shall now proceed to apply the above principles to the instant case. Claimant had the burden, under Section 311 of the Act, of proving that Fluor either had knowledge of his occupational injury or that he provided Fluor with such notice. To meet this burden, Claimant proffered the following testimony:

Q: Did you report being—

A: Yeah.

Q: —sick to Fluor?

A: Yeah. I reported it, and the safety man for—it was either Pennsylvania

Power and Light or the Fluor Constructors safety man took me in the trailer and made a report. I believe the guy's name is Ron Wilson. He made a report and turned it over to my foreman. They took me out of it and told me they were going to lay me off because I couldn't handle it.

(Notes of Testimony (N.T.), 1/15/91, at 10; Reproduced Record (R.R.) at 40a.) Claimant also testified that Fluor assigned him to a different job and eventually ended his employment because of his sickness:

Q: Now, did you get assigned to a different job after you got sick with Fluor?

A: Yeah....

   ....

Q: Why did you end your employment with Fluor?

A: Because I couldn't do the work and they paid me off.

Q: What did you do when you left the Fluor job?

A: ... I think I worked six days after that and I couldn't breathe no more. When that Fluor job was done, within 36 hours after I got home, I had to go in the hospital because I had hives all over me and I couldn't breathe....

   ....

Q: Now you stated you were sick; is that correct, when you ...

A: Yes.

Q: Did you continue to work?

A: I tried.

(N.T., 6/24/91, 24–25; R.R. 72a–73a.)

Thus, Claimant established that Fluor had knowledge of Claimant's illness by virtue of the symptoms he exhibited while working for them, his report of his illness to his supervisor, and by the fact that Fluor changed Claimant's employment status due to his illness. As noted above, this testimony was never contradicted, and clearly, **if accepted as credible by the WCJ,** this testimony would have been sufficient to establish that Fluor had actual knowledge of Claimant's occupational injury. Because the WCJ's decision does not indicate that a credibility determination was ever made as to Claim-

ant's testimony in this regard, we vacate the Board's order insofar as it affirms the WCJ's decision regarding inadequate notice to Fluor and remand this matter to the Board, and thence to a WCJ, for an appropriate credibility determination.

Jurisdiction relinquished.

### ORDER

**AND NOW,** March 24, 1997, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed insofar as it denies the claim petitions of Claimant against Chicago Bridge & Iron Company and Songer Corporation. The order of the Workmen's Compensation Appeal Board in the above-captioned matter is vacated insofar as it denies the claim petition of Claimant against Fluor Corporation and the matter is remanded to the Board for remand to the Workers' Compensation Judge for the purpose of assessing the credibility of Claimant's testimony regarding notice of his occupational injury to Fluor Corporation.

Jurisdiction relinquished.