IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Del Val Home Improvements,      :
                :
            Petitioner   :
                :
        v.           : No. 1117 C.D. 2022
                : Submitted: February 4, 2025
John Gaw (Workers' Compensation  :
Appeal Board),           :
                :
         Respondent : 


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY JUDGE WOJCIK        FILED: March 19, 2025


      Del Val Home Improvements (Employer) petitions for review of a decision of the Workers' Compensation Appeal Board (Board), which reversed an order of the Workers' Compensation Judge (WCJ) granting Employer's Modification Petition. The WCJ originally modified John Gaw's (Claimant) wage loss benefits from temporary total disability to temporary partial disability as of October 27, 2020, after finding Claimant's whole-person impairment rating to be 30%. The Board reversed after concluding that the WCJ's determination improperly discredited an impairment rating evaluation (IRE) that considered bodily impairments not described in the Notice of Compensation Payable (NCP), despite our Supreme Court's holding in *Duffey v. Workers' Compensation Appeal Board (Trola-Dyne, Inc.)*, 152 A.3d 984 (Pa. 2017) (*Duffey II*).

We stayed consideration of this matter pending the Supreme Court's review of our decision in *Sicilia v. API Roofers Advantage Program (Workers' Compensation Appeal Board)*, 277 A.3d 1213 (Pa. Cmwlth. 2022) (*Sicilia I*), *aff'd by evenly divided court*, 318 A.3d 803 (Pa. 2024) (*Sicilia II*). *See* Commonwealth Court Order, 10/20/23, (Per Curiam). Notwithstanding our multiple directives to the parties to hold a status conference on the effect of the Supreme Court's decision, *id*., *see also* Commonwealth Court Order, 9/5/24, (Per Curiam), or to file additional briefing regarding the same, *see* Commonwealth Court Order, 10/2/24, (Per Curiam), counsel for both parties have neglected to inform us of their positions. We have consequently decided to resolve this matter on the briefs originally submitted. Upon careful review, we vacate the Board's order and remand this matter to the Board with instructions to further remand to the WCJ to conduct a credibility assessment consistent with the following opinion.

## I. Background

On August 25, 2002, Claimant suffered a work-related injury when he fell off a roof, landing on his feet and fracturing his back, both ankles, both heels, pelvis and coccyx. WCJ's Op., 2/24/22, Finding of Fact (F.F.) Nos. 2, 7a. Employer issued an NCP which "described injuries in the nature of lumbar, ankle, heels, pelvis, and coccyx fractures . . . resulting in a weekly compensation rate of $331.00." *Id*. at F.F. No. 2.

Since the accident, Claimant estimates he has been treated by five to eight surgeries. Nevertheless, he still has a leg length differential and continues to experience pain in his ankle, right hip, heels, back, and neck. *Id*. at F.F. No. 7a. Although Claimant sometimes walks with an assistive device and takes some

2

medication, "[h]is back, ankles, heels, pelvis, and coccyx are not broken or currently fractured." *Id*. at F.F. No. 7a-b.

On January 14, 2021, Employer filed the instant Modification Petition alleging that as of October 27, 2020, Claimant's whole-person impairment was less than 35%, based on an IRE conducted by Roy Lerman, M.D., which assigned Claimant a whole-person impairment rating of 30%. WCJ's Op. at F.F. Nos. 1, 3. Employer alleged that it was therefore entitled to a reduction in Claimant's wage loss benefits from total disability to partial disability. *Id*.

By way of evidence, Employer submitted Dr. Lerman's IRE and deposition testimony. Dr. Lerman noted that "Claimant presented as a 73-year-old man with complaints of right-sided ankle and leg pain and left-sided lower back pain . . . . He continue[s] to have pain and swelling in the ankle. He had a recent surgery to straighten out the fifth toe. He noted ongoing symptoms in his foreleg, back, and right leg." WCJ's Op. at F.F. No. 5a. Using the range-of-motion model, Dr. Lerman rated the ankle fusion, lumbar spine compression fracture, and Claimant's whole hip replacement. *Id*. at F.F. No. 5e. At his deposition, Dr. Lerman testified that he rated the whole hip replacement "due to the fact that he had a pre-existing degenerative change that was aggravated by the injury." Deposition of Roy Lerman, M.D., 5/14/21, Reproduced Record (R.R.) at 39a. However, he conceded that the degenerative change and resulting hip replacement was not an accepted injury described in the NCP. *Id*. Although Dr. Lerman considered the heel and coccyx fractures, he did not rate those injuries because he determined the fractures to be healed. *Id*. at F.F. No. 5h.

Claimant rebutted Employer's evidence with the IRE and accompanying deposition testimony of William Murphy, D.O. Having reviewed Dr.

3

Lerman's evaluation, Dr. Murphy agreed that his own evaluation was comparable and that no "major difference" existed between the two evaluations. WCJ's Op. at F.F. No. 6e. Nevertheless, Dr. Murphy included a greater number of impairments in his rating. Dr. Murphy rated the lumbar spine compression fracture, cervical strain with aggravation of cervical degenerative joint and disc disease, the ankle fusion (described as the right trimalleolar fracture), the left calcaneal fracture, the left sacral wing fracture, and the hip replacement. *Id.* at F.F. No. 6c. In sum, Dr. Murphy assigned Claimant a whole-person impairment rating of 41%. *Id.*

Dr. Murphy explained that he rated certain impairments, like the cervical strain and the hip replacement, because the NCP was simply "one document" used when conducting an IRE. Deposition of William Murphy, D.O., 9/27/21, R.R. at 114a. On cross examination, Employer's counsel and Dr. Murphy engaged in the following exchange:

> Q. All right. So, Doctor, when you are asked to perform an impairment rating evaluation on behalf of the [Bureau of Workers' Compensation (Bureau)], you are directed to perform that impairment evaluation pursuant to the work injuries; correct?
>
> A. Yes.
>
> Q. Okay. And that means if any injury isn't accepted as work injury, you would not perform a rating on that injury because it's not -- that impairment evaluation pursuant to the work injuries; correct?
>
> A. Well, there is some leeway with that in that, in reviewing the medical records, there may be some work-related injuries that may have not been outlined on the paperwork, but typically you use that paperwork as a guideline from the Guides – I'm sorry, from the Bureau.

4

*Id.* at 118a. Regarding the fractures which Dr. Lerman did not rate because he considered them to be healed, Dr. Murphy clarified that he differed from Dr. Lerman's evaluation on this point because, while the bony part of the fracture may have healed, the fractures remained symptomatic. *Id.* Dr. Murphy agreed, however, that had he limited his rating to only the accepted injuries, then Claimant's whole-person impairment rating would fall below 35%. WCJ's Op. at F.F. No. 6e.

Ultimately, the WCJ granted Employer's Modification Petition on January 24, 2021. WCJ's Op. at F.F. No. 13. In pertinent part, the WCJ credited Dr. Lerman's testimony over Dr. Murphy's to the extent their testimonies conflicted. *Id.* at F.F. No. 12. Specifically, the WCJ found:

> 10. The testimony of Dr. Lerman is credible. . . . . His testimony is credible that Claimant's whole[-]person impairment is rated at 30%. Dr. Lerman conducted an impairment rating evaluation on all of Claimant's ratable work injuries as described in the [NCP]. His testimony is credible that the heel and coccyx fractures were not rated because they were healed at the time of his exam. His testimony is credible regarding the nature of the examination, how he rated the various body parts, and his ultimate conclusion that Claimant's whole[-]person impairment is 30%.
>
> 11. The testimony of Dr. Murphy is credible in part. His testimony is credible that his examination was comparable to the examination by Dr. Lerman. His testimony is credible that he rated various body parts that were not included on the [NCP], including the cervical spine and the hip. His testimony is credible that if he deducted the ratings for the body parts that are not on the [NCP], his rating would fall below 35%. His testimony is not credible that Claimant has a 42% whole-[]person impairment. Dr. Murphy agreed he rated body parts not contained on the [NCP] but performed a rating that he believed was "proper and just."

*Id*. at F.F. Nos. 10-11. Claimant subsequently appealed to the Board.

In an opinion circulated on September 15, 2022, the Board reversed the decision of the WCJ. The Board observed that Employer would only be entitled to a grant of its Modification Petition if it could establish that Claimant's whole-person impairment rating was less than 35% under the American Medical Association's "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009) (AMA Guides). Board's Op. at 2-3 (citing Section 306(a.3) of the Workers' Compensation Act (Act), 77 P.S. §511.3).[1] Further, per *Duffey II*, 152 A.3d at 989, the Board noted that an IRE may be rendered invalid if the physician-evaluator limits his rating solely to the accepted injuries rather than including all conditions which are fairly attributable to the compensable injury. Board's Op. at 5. Notwithstanding the deference otherwise owed to the WCJ's credibility determination, *Vols v. Workmen's Compensation Appeal Board (Alperin, Inc.)*, 637 A.2d 711, 714 (Pa. Cmwlth. 1994), the Board believed that the WCJ erred by crediting Dr. Lerman over Dr. Murphy because Dr. Lerman limited his rating to the accepted injuries. Board's Op. at 3, 6. After likening the instant matter to this Court's decision in *Sicilia I*, 277 A.3d at 1215-16, wherein a WCJ improperly favored an IRE which limited its rating to the accepted injuries over one which did not, the Board concluded that "the WCJ could not simply reject Dr. Murphy's opinion based solely on [his rating] including those additional conditions that were not previously denoted as compensable." Board's Op. at 7. Thus, the Board believed that the WCJ erred as a matter of law, reversed her order, and reinstated Claimant's total disability benefits. *Id*.

---

[1] Section 306(a.3) of the Act of June 2, 1915, P.L. 736, *as amended*, added by Section 1 of the Act of October 24, 2018, P.L. 714, 77 P.S. §511.3.

Notably, Chairman Frioni, joined by Commissioner Gabig, dissented, reasoning that this case was distinguishable from *Sicilia I*. "Here, the WCJ had the opinions of two IRE doctors, one who included additional injuries and one who did not – pure credibility. This is not a case where the WCJ believed that she was bound by prior adjudications." Board's Op. at 8. This timely appeal followed.

## II. Issue

Before this Court,[2] Employer presents a single issue for our review: whether the Board impermissibly disturbed the WCJ's credibility determination by obscuring the WCJ's opinion to implicate *Duffey II*.

## III. Discussion

Initially, Section 306(a.3) of the Act provides:

> When an employe has received total disability compensation . . . for a period of one hundred and four weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the one hundred and four weeks to determine the degree of impairment *due to* the compensable injury, if any.

77 P.S. §511.3(1) (emphasis added). The Act also requires that a qualified physician-evaluator must assess the degree of a claimant's impairment in accord

---

[2] Our "review is limited to a determination of whether there has been an error of law, whether constitutional rights were violated, or whether necessary findings were supported by substantial evidence." *Jamieson v. Workmen's Compensation Appeal Board (Chicago Bridge & Iron)*, 691 A.2d 978, 982 (Pa. Cmwlth. 1997). "Substantial evidence is such relevant evidence a reasonable mind might accept as adequate to support a conclusion." *WAWA v. Workers' Compensation Appeal Board (Seltzer)*, 951 A.2d 405, 407 n.4 (Pa. Cmwlth. 2008).

with the AMA Guides.  *Id*. §511.3(2).  A claimant is presumed to be totally disabled, and entitled to total disability benefits, if his degree of impairment is equal to or greater than 35%.  Otherwise, the claimant's benefits may be reduced to partial disability benefits.  *Id*.

## A. *Duffey II*

In *Duffey II*, 152 A.3d at 986, our Supreme Court sought to ascertain what exactly the General Assembly meant when it directed physician-evaluators to determine the degree of impairment *due to* the compensable injury.[3]  More particularly, the Court sought to determine whether the evaluation was to include any condition which could be fairly attributed to the injury as part of a claimant's impairment rating or whether the evaluation was limited solely to the injuries described in the NCP (*i.e.*, the accepted injuries).  *Id*.

The claimant therein suffered electrical burns while in the course and scope of his employment.  *Duffey II*, 152 A.3d at 896.  As a result, the claimant developed a number of psychological conditions, such as chronic post-traumatic stress disorder.  *Id*.  However, at all events prior to the employer's modification petition, the NCP included only the electrical burns ("bilateral hands-nerve and joint pain").  *Id*.  Because the accepted injuries did not include the psychological conditions, the physician evaluator did not include them in his rating and found that the claimant possessed a whole-person impairment rating well below the statutory

---

[3] It is worth noting that, in *Duffey*, the Supreme Court considered former Section 306(a.2), added by the Act of June 24, 1996, P.L. 350, and repealed by the Act of October 24, 2018, P.L. 714, *formerly* 77 P.S. 511.2.  Former Section 306(a.2) was struck down as an unconstitutional delegation of legislative authority in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017).  Nevertheless, "[t]he IRE provisions of former Section 306(a.2) that are pertinent to this appeal were reenacted in Section 306(a.3) without substantial modification."  *City of Philadelphia v. Turner*, 326 A.3d 475, 481 (Pa. Cmwlth. 2024).

threshold required for total disability benefits. *Id*. In the proceedings before the WCJ, the claimant attacked the validity of the IRE by arguing that the physician-evaluator failed to include the psychological conditions in his impairment rating and submitted evidence of his psychological conditions. *Id*. at 987.[4]

The WCJ was persuaded by the claimant's argument. As a result, the WCJ deemed the claimant's contrary evidence to be credible, amended the NCP to include the claimant's psychological conditions, and found as fact that the physician-evaluator's IRE was invalid for failing to consider the psychological conditions. The WCJ thereby denied the employer's modification petition. *Duffey II*, 152 A.3d at 987. The Board, however, disagreed and reversed, reasoning that an evaluator "may properly limit an [IRE] according to the accepted injuries as reflected in a [NCP]." *Id*. Likewise, we affirmed the Board's reversal, opining "that the focus of an IRE is on the state of the claimant and the compensable injury, *as described in NCP at the time the IRE is performed*." *Duffey v. Workers' Compensation Appeal Board (Trola-Dyne, Inc.)*, 119 A.3d 445, 451 (Pa. Cmwlth. 2015) (*Duffey I*), *reversed*, *Duffey II*, 152 A.3d at 996 (emphasis in original).

The Supreme Court, however, held:

> We find the outcome of this case to be controlled by straightforward statutory interpretation, a matter over which our review is plenary. At the outset, we reiterate that a pervasive focus on "compensable injury" has obscured an important aspect of the governing statute. In this regard, Section 306(a.2) explicitly invests in physician-evaluators the obligation to "determine the

---

[4] More specifically, the claimant submitted his own testimony regarding his ongoing psychological conditions, as well as the deposition testimony of his family physician who explained that the psychological conditions suffered by the claimant were fairly attributable to the compensable injury, and the deposition testimony of a neurologist who believed that the compensable injury had resulted in neuropathic pain and cognitive and emotional changes. *Duffey II*, 152 A.3d at 987.

9

degree of impairment *due to* the compensable injury[.]" **Per such express terms, a physician-evaluator must consider and determine causality in terms of whether any particular impairment is "due to" the compensable injury**. Moreover, the required evaluation is of the "percentage of permanent impairment of the whole body resulting from the compensable injury."

We have no difference with the Commonwealth Court's reasonable holding that [NCP] should define "compensable injury" for purposes of this inquiry. Such recognition, however, simply does not determine the range of impairment which may be "due to" such injury. Under Section 30(a.2) and the applicable impairment guidelines, **the physician-evaluator must exercise professional judgment to render appropriate decisions concerning both causality and apportionment**.

*Duffey II*, 152 A.3d at 988-89 (internal citations omitted; italics in original; bold added). Because the physician-evaluator did not exercise his professional judgment to assess the claimant's psychological conditions, nor determine whether the conditions were caused by or fairly attributable to the compensable injury, the Supreme Court reversed. *Id*. at 989, 996. The Supreme Court also "remanded for reinstatement of the finding of invalidity rendered by the WCJ." *Id*. at 996.

### B. *Sicilia I & II*

Thereafter, in *Sicilia I*, 277 A.3d at 1213, this Court reversed a Board decision which held that a WCJ properly limited a claimant's impairment rating to the claimant's accepted injuries. The claimant therein suffered from lumbar strain and a left knee contusion after falling off a ladder while in the course and scope of

his employment; the employer issued an NCP which described the same injuries.[5] *Id.* at 1214. Later on, the claimant sought to include chronic pain syndrome and chronic adjustment disorder with anxiety and depression as accepted injuries. The employer stipulated to adding the injuries to the NCP and a WCJ approved the addition. *Id.* Eventually, the employer filed a modification petition seeking to reduce the claimant's wage loss benefits from total to partial based on an IRE which found that the claimant had a 23% whole-person impairment rating. *Id.* The physician-evaluator noted that her rating was constrained to the injuries described in the NCP, the parties' stipulation, and/or any subsequent court decision.[6] *Id.* at 1215. In the physician-evaluator's initial report, however, the physician-evaluator noted that the claimant suffered from additional diagnoses, such as lumbar disc protrusion or spondylolisthesis, which were fairly attributable to the claimant's work injury but not described as an accepted injury. *Sicilia I*, 277 A.3d at 1215.

Before the WCJ, the employer submitted the physician-evaluator's initial IRE which rated only the accepted injuries and an addendum report by the same physician-evaluator, written at the employer's request, which also rated the additional diagnoses – constituting a whole-person impairment rating greater than 35%. *Sicilia I*, 277 A.3d at 1215-16. The WCJ credited the 23% impairment rating as credible and specifically discredited the rating in the addendum report, thereby finding that the employer had carried its burden of proof. Thus, the WCJ granted

---

[5] Initially the employer accepted a notice of temporary compensation payable describing these injuries which subsequently converted to a permanent NCP. *See Sicilia I*, 277 A.3d at 1214.

[6] The procedural history underlying *Sicilia I* is extensive. For example, earlier litigation between the employer and the claimant resulted in a WCJ finding that some surgeries the claimant underwent years after the initial injury were nevertheless causally related and constituted an accepted injury. *See Sicilia I*, 277 A.3d at 1215.

11

the employer's modification petition and reduced the claimant's wage loss benefits to partial disability. *Id*. at 1216.

The Board affirmed. Because the physician-evaluator exercised her professional judgment and did in fact consider the additional diagnoses,[7] the Board reasoned that the WCJ had simply exercised her sound judgment in resolving conflicting evidence, *i.e.*, a credibility determination which the Board and reviewing courts were bound to respect. *Sicilia I*, 277 A.3d at 1216.

We disagreed. As our Supreme Court had "elaborated" in *Duffey II*, we explained that Section 306(a.3) of the Act affords a "great deal of discretion in the *physician-evaluator* to determine what diagnoses are 'due to' a work-related injury, outside the ordinary modification process." S*icilia I*, 277 A.3d at 1218 (emphasis added). Hence, contrary to the employer's assertion, the WCJ and the Board had greatly overvalued the authority afforded to *the WCJ* in controlling the IRE process. *Id*. Critically, we also held that neither this Court nor the Board were hand-tied by the WCJ's credibility determination. *Id*. at 1218-19. Rather, the WCJ's purported credibility determination was, in fact, a misapprehension of law and therefore not entitled to deference.

> The WCJ's reasoning for rejecting [the physician-evaluator's] testimony concerning the additional diagnoses, and the higher rating resulting from such inclusion, was not, in fact, a credibility determination based on evaluation of the evidence, but rather a misapprehension of the discretion accorded an IRE physician-evaluator. . . . . Simply put, the WCJ erred as a matter of law in constraining the IRE review solely to the earlier accepted descriptions of [the c]laimant's work injuries.

---

[7] *Accord Pennsylvania AFL-CIO v. Commonwealth*, 219 A.3d 306 (Pa. Cmwlth. 2019).

12

*Id*. at 1219 (applying Section 422(a) of the Act, 77 P.S. §834). Therefore, we reversed the Board's order. However, we also remanded with instructions to reinstate the claimant's total disability benefits. *Sicilia I*, 277 A.3d at 1219.

On appeal, an evenly divided Supreme Court[8] affirmed by *per curiam* order. *Sicilia II*, 318 A.3d at 803. In pertinent part, Justice Donohue, joined by Justices Dougherty and Mundy, opined that she would have affirmed this Court's order only insofar as we held that the physician-evaluator was entitled to consider the claimant's additional diagnoses and that the WCJ did not conduct a genuine credibility assessment. *Id*. To the extent Justice Donohue differed with our opinion and order, she noted that she would have remanded the matter to the WCJ for an "actual" credibility assessment. *Id*.

> What does distinguish this case from *Duffey* [*II*] is that the WCJ here rejected the evidence that supported the higher impairment rating, whereas the WCJ in *Duffey* [*II*] accepted evidence that supported a higher rating. However, here, the WCJ's decision cannot be fairly construed as a credibility determination regarding the quantity or quality of the evidence supporting the [additional diagnoses] and its causal connection to the [claimant's] injury. The WCJ's decision was based on an incorrect legal determination that [the physician-evaluator] was not permitted to consider impairments not listed as injuries in the NCP. As correctly determined by the Commonwealth Court, that limitation on [the physician-evaluator's] evaluation violated *Duffey* [*II*], which explicitly requires a physician-evaluator to consider impairments not listed as injuries in the NCP, if those impairments are causally related to the work injuries defined in the NCP. That distinction does not involve an

---

[8] *See Sprague v. Cortes*, 150 A.3d 17, 21 (Pa. 2016) ("When [the Supreme] Court evenly divides on a legal issue presented in an appeal, we enter a final *per curiam* order affirming the lower court's judgment – an action which maintains the status quo of the matter prior to the filing of the appeal in [the Supreme] Court.") (Baer, J., Opinion in Support of Affirmance (OISA)).

> expansion of *Duffey* [*II*], but it does demonstrate what the
> Commonwealth Court got wrong here.

*Id*. at 811. Thus, while we correctly ascertained that the credibility determination was not, in fact, one, Justice Donohue believed we erred by ordering reinstatement of the claimant's total disability benefits where the WCJ's error of law prevented her from properly assessing the credibility of the physician-evaluator's evidence in other respects, *e.g.*, whether the additional diagnoses were caused by the work injury.[9] *Id*.

Justice Wecht wrote an Opinion in Support of Reversal (OISR) once again expressing his disagreement with *Duffey II*, *see Sicilia II*, 318 A.3d at 811-813 (Wecht, J., OISR), while Justice Brobson wrote an OISR, joined by Chief Justice Todd, reasoning that *Duffey II* must be "cabined to its facts." *See Sicilia II*, 318 A.3d at 813-829 (Brobson, J., OISR). Given their varying degrees of disagreement with *Duffey II*'s central holding, however, neither OISR discussed the issue of remand.

## C. *Turner*

Three months after the Supreme Court's *per curiam* order in *Sicilia II*, a panel of this Court issued its decision in *City of Philadelphia v. Turner*, 326 A.3d 475 (Pa. Cmwlth. 2024). Therein, the claimant suffered from a "strain, contusion of the lumbar spine, bilateral feet and left hip together with a patellar strain/sprain with exacerbation of pre[]existing left patellar tendon rupture." *Id*. at 477-78. After the employer filed its modification petition, a physician-evaluator conducted an evaluation of the claimant, who reported that he was experiencing a number of

---

[9] Justice Donohue recognized that the claimant's spondylolisthesis was already determined to be causally related to the claimant's compensable injury in earlier litigation following a number of surgeries. *Sicilia II*, 318 A.3d at 811 n. 13 (Donohue, J., OISA). Nevertheless, Justice Donohue would have remanded for a credibility assessment of the IRE, as it may have still suffered from "issues beyond causation alone . . ." *Id*. We have phrased it as implicating the issue of causality purely for demonstrative purposes.

14

additional conditions like "depression, anxiety, erectile dysfunction, urinary incontinence, and significant weight gain." *Id*. at 478. The physician-evaluator believed he was only permitted to rate the accepted injuries and assigned the claimant a 31% whole-person impairment rating. *Id*.

The WCJ ultimately discredited the physician-evaluator's whole-person impairment rating because he rated only the accepted work injuries while acknowledging in his deposition that there could be a causal relationship between the initial work injury and the claimant's additional ongoing conditions. *Turner*, 326 A.3d at 479-80. Relying on *Sicilia I*, the WCJ believed that the physician-evaluator consequently misapprehended the discretion afforded to him in the IRE process and failed to exercise his professional judgment regarding causality and apportionment. *Id*. Because the physician-evaluator's IRE was not credible, the WCJ determined that the employer failed to carry its burden of proof and denied its modification petition. *Id*. The Board affirmed. *Id*. at 481.

This Court, upon review, stated that "given the nature of the Supreme Court's affirmance in *Sicilia II*, we must apply the holding of *Duffey II* as we interpreted it in *Sicilia I*." *Turner*, 326 A.3d at 484-85. In other words, Section 306(a.3) of the Act required the physician-evaluator to consider all impairments that were "due to" the claimant's work injury when calculating the claimant's whole-person impairment rating. *Id*. at 485. For a WCJ to permit otherwise would constitute an error of law. *Id*. Because the claimant therein reported the excluded conditions to the physician-evaluator, who admitted that the conditions could be related to the work injury but failed to make any causation determination regarding

15

the same based on the mistaken belief that the impairment rating needed to be limited to the impairments discussed in the NCP, this Court affirmed the decision below.[10]

## D. Analysis

Taken together, as was the case in *Turner*, 326 A.3d at 484-85, the holding in *Duffey II* as we understood it in *Sicilia I* controls. For a physician-evaluator to misapprehend the discretion afforded to him in the IRE process and consequently exclude impairments *due to* the claimant's work-related injury, although not described in the NCP or consider an otherwise accepted injury, is an error of law. *Duffey II*, 152 A.3d at 988-89. Further, a WCJ cannot insulate this error of law from a reviewing agency or court's standard of review under the guise of a simple credibility determination – nor may the WCJ instigate such an error of law by discrediting a physician-evaluator's otherwise lawful rating of any impairment fairly attributable to the claimant's work-related injury. *Sicilia I*, 277 A.3d at 1219. Finally, while Justice Donohue's OISA in *Sicilia II* is not binding on this Court, we are mindful that under such a circumstance as where a purported credibility determination has been disturbed, we must be sensitive to whether a remand is necessary. *Sicilia II*, 318 A.3d at 811 (Donohue, J., OISA).

Employer argues that there is, in fact, no *Duffey II* argument to be made as the WCJ did not resolve the conflict between Dr. Lerman's and Dr. Murphy's testimonies purely on Dr. Murphy's consideration of injuries not included in the NCP. Employer's Brief at 7-8. Rather, Employer offers that because Dr. Lerman also considered injuries outside the scope of the NCP, like the hip replacement, that the WCJ simply found Dr. Lerman to be more persuasive such that we must defer to

---

[10] Notably, Senior Judge Leavitt wrote a concurring opinion in which she acknowledged that *Duffey II* and *Sicilia I* controlled the outcome but expressed her belief that *Duffey II* should be revisited and reconsidered. *See Turner*, 326 A.3d at 486-89 (Leavitt, S.J., concurring).

the WCJ's credibility determination. Employer's Brief at 9-10. Claimant, on the other hand, primarily argues that Employer is seeking to sidestep *Duffey II* and *Sicilia I* by "metaphysically transforming" the present issue into one of a simple credibility assessment. Claimant's Brief at 10.

Here, Employer's feeble attempt to ascribe the WCJ's credibility determination to Dr. Lerman's persuasiveness rather than an error of law must fail. A plain reading of the WCJ's opinion indicates that the WCJ believed that the only discernible difference between Dr. Lerman's rating and Dr. Murphy's rating was that the WCJ believed that Dr. Murphy impermissibly reached a rating greater than 35% by rating impairments beyond those listed in the NCP. In no uncertain terms, the WCJ reasoned that Dr. Murphy's "testimony is credible that he rated various body parts that are not on the [NCP], including the cervical spine and the hip. His testimony is credible that if he deducted the ratings for the body parts that are not on the [NCP], his rating would fall below 35%." WCJ's Op. at F.F. No.11. It therefore appears that the WCJ guided her analysis with the principle that the Act permitted only the accepted injuries to be included in Claimant's whole-person impairment rating and favored Dr. Lerman's lower rating on that basis. As such, we hold that the WCJ unquestionably erred by discrediting Dr. Murphy's IRE.

Furthermore, the Board, contrary to Chairman Frioni's belief, correctly ascertained as much when it reversed the WCJ's order. We believe that the Board erred by ending its analysis there, however. After summarily likening the instant matter to *Sicilia I*, the Board simply followed suit and hastily ordered Claimant's total disability benefits to be reinstated. The Board should have first ascertained whether a remand was necessary under the unique circumstances presented by this case.

17

In *Duffey II*, 152 A.3d at 996, the Supreme Court reversed this Court's order and remanded with instructions to reinstate the WCJ's finding that the employer's IRE was invalid. As a consequence, the claimant's total disability benefits would necessarily have been reinstated on remand, as the employer could not have borne its evidentiary burden. *See Westmoreland Regional Hospital v. Workers' Compensation Appeal Board (Pickford)*, 29 A.3d 120, 127 n. 10 (Pa. Cmwlth. 2011) ("The burden in an IRE proceeding rests with the employer."); *see also* Section 413(a) of the Act, 77 P.S. §772 ("A [WCJ] . . . may, at any time . . . modify . . . a[n NCP] . . . upon petition filed by either party with the [Department of Labor and Industry], upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased . . ."). As a result, the Supreme Court's crafted remedy rectified the sole error of law: the physician-evaluator's failure to exercise his professional judgment. Likewise, in *Turner*, 326 A.3d at 479-80, the error of law lies only in the physician-evaluator's misapprehension of the law, such that the WCJ concluded that the employer failed to carry its burden of proof. Because the WCJ and the Board correctly disposed of this error of law, the issue of remand never manifested.

The error of law in *Sicilia I*, however, was more pervasive than in *Duffey II or Turner*. In *Sicilia I*, 277 A.3d at 1215-16, the physician-evaluator herself misapprehended the discretion afforded to her in the IRE process under Section 306(a.3) of the Act and rated only the accepted injuries in her initial IRE. The WCJ then compounded this error of law by crediting the initial IRE on that basis and discrediting the addendum report under the mistaken belief that the whole-person impairment rating was limited by law to the same. *Id.* at 1216. The error of law, then, lies in three places: (1) the physician-evaluator's misapprehension of the

18

law and failure to exercise her professional judgment; (2) the WCJ's crediting of the initial IRE; and (3) the WCJ's discrediting of the addendum report. Yet, because it was the employer that requested the addendum report, the employer may still have borne its evidentiary burden. *See Sicilia II*, 318 A.3d at 811 n.13 (Donohue, J., OISA). While this opinion should not be interpreted to cast any doubt on our holding in *Sicilia I*, we observe that a remand for another credibility assessment may have more carefully rectified the error of law we identified therein – while faithfully adhering to the employer's right to seek a modification of the claimant's total disability benefits under the Act. *See* 77 P.S. §772.

Presently, whether by accident or design, the error of law lies only in the WCJ's *discrediting* of Dr. Murphy's IRE. That is, our review of the record does not elicit any evidence that Dr. Lerman failed to exercise the discretion afforded to him under the Act. While the WCJ observed that Dr. Lerman "conducted an [IRE] on all of Claimant's ratable work injuries as described on the [NCP,]" the same is necessarily true of Dr. Murphy's IRE. WCJ's Op. at F.F. Nos. 10-11. The WCJ did not find as fact, and would have been wrong to suggest, that, unlike Dr. Murphy's rating, Dr. Lerman's rating was *limited* to the accepted injuries. As Employer points out, although not described in the NCP, Dr. Lerman did in fact rate Claimant's hip replacement. He did so because Claimant "had a pre[]existing degenerative change that was aggravated by the injury." Deposition of Roy Lerman, M.D., R.R. at 39a. Indeed, throughout the cross-examination of Dr. Lerman, Claimant's counsel never obtains an admission that Dr. Lerman misunderstood his duty to exercise professional judgment in assessing conditions beyond the scope of the accepted injuries. For example:

19

> Q. And when you were doing the impairment evaluation, you [were] required to look at only the work-related injuries. Correct?
>
> A. Correct.
>
> Q. So, can we, therefore, agree that the total hip replacement was, in fact, causally related to his August 2002 work injury, since you -- given what you just said?
>
> A. Well, that's not my understanding. I don't think that was on the NCP. And I included that based on statements of the patient and the fact that he had that treatment.
>
> Q. Okay.

*Id.* at 78a. We do not believe that Dr. Lerman's initial agreement to rating solely the work-related injuries should be interpreted as his believing that he should rate only the accepted injuries without determining causality and apportionment. Indeed, his testimony regarding his decision to rate the hip replacement immediately thereafter belies such an interpretation.[11] This exchange ultimately demonstrates that, unlike the physician-evaluators in *Duffey II*, *Sicilia I* and *Turner*, Dr. Lerman did not necessarily misapprehend the discretion afforded to him under Section 306(a.3) of the Act.[12]

---

[11] In any case, as Senior Judge Leavitt explained, the law is "muddled" in this area. *Sicilia I*, 277 A.3d at 1221 (Leavitt, S.J., dissenting). As such, counsel's choice of the phrase "work-related injuries" fails to apprise us of his purpose for asking the question. Is this work-related injury the accepted, compensable injury, or does it include any condition fairly attributable thereto?

To the extent counsel's following question was meant to clarify this distinction, or to implicate Dr. Lerman's misapprehension of the law, it failed to obtain such a clarification. Under these muddled circumstances, we cannot consider Dr. Lerman's agreement to be any sort of damning admission.

[12] We believe that determining whether such testimony indicates that Dr. Lerman's rating is inconsistent or under-inclusive under the law, thereby rendering his IRE incredible, is a matter best left to the WCJ on remand.

As things stand, the WCJ's error of law extends only to her decision to discredit Dr. Murphy's rating because Dr. Murphy rated conditions beyond the scope of the NCP. Because Dr. Lerman's rating indicates that his rating was not limited by such an error of law, Employer may still have borne its evidentiary burden and may remain entitled to a modification of Claimant's wage loss benefits. We therefore believe that a remand is necessary for the WCJ to properly resolve the conflicts in Dr. Lerman's and Dr. Murphy's ratings and testimonies.

## IV. Conclusion

Accordingly, the Board's order is VACATED and this matter is REMANDED for proceedings consistent with the foregoing Opinion.

MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Del Val Home Improvements,    :
   :
       Petitioner   :
   :
       v.   : No. 1117 C.D. 2022
   :
John Gaw (Workers' Compensation   :
Appeal Board),   :
   :
       Respondent :

## **O R D E R**

AND NOW, this 19th day of March, 2025, the September 15, 2022 Order of the Workers' Compensation Appeal Board (Board) is **VACATED** and this matter is **REMANDED** to the Board for further remand to a Workers' Compensation Judge to properly resolve the conflicting impairment rating evaluations in a manner consistent with the foregoing Opinion.

Jurisdiction is relinquished.

_____
MICHAEL H. WOJCIK, Judge